# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DEBBIE MALONEY, AMY VEGA and SALLY CZARNECKI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br>  vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., and MIDLAND FUNDING, LLC,<br><br>        Defendants. | Case No.: 17-cv-1335<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Debbie Maloney is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Amy Vega is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Sally Czarnecki is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes. Specifically, the alleged debts were for a personal credit card account.

7. Each Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt arose from consumer credit transactions – the use of a personal credit card account.

8. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

9. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

11. Defendant Midland Funding LLC, ("Midland Funding") is a Delaware corporation with its principal place of business located in California. The Wisconsin Department of Financial Institutions lists Midland Funding's address as 3111 Camino Del Rio North, San Diego, CA 92108. Midland Funding's actual address may be MCM's address.

12. On its face, Wis. Stat. § 427.103(3) applies both to creditors collecting on their own behalf and to creditors who hire other debt collectors to collect on the creditor's behalf.

13. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

2

Case 2:17-cv-01335-DEJ   Filed 09/29/17   Page 2 of 20   Document 1

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

14. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

15. Midland Funding is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies, including MCM.

16. Midland Funding is a "merchant" as defined in the WCA, as the alleged debt arises from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

17. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

18. Midland Funding uses third party debt collection agencies, including MCM, to collect consumer debts. Midland Funding, directly or indirectly, is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

19. A company meeting the definition of a "debt collector" (here, Midland Funding) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

3

# THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.

20. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

21. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

22. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

4

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

23. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

24. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15,

5

2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

25. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

26. The FDCPA prohibits debt collectors from contacting third parties and disclosing the existence of a debt. 15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

27. 15 U.S.C. § 1692b allows a debt collector to communicate with third parties for the purpose of determining the consumer's location or employment. However, the debt collector must "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

28. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

6

29. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

30. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

31. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

32. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

33. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

34. 15 U.S.C. § 1692g(a) states:

> a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

7

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**THE WISCONSIN CONSUMER ACT,
CH. 421-427 WIS. STATS.**

35. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

36. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

37. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

38. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

39. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

40. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

8

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

41. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

42. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

43. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

44. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## FACTS

### *Maloney Letter*

45. Plaintiff Debbie Maloney entered into a consumer transaction with Comenity Capital. ("Comenity") for a personal credit card.

46. Prior to October 7, 2016, Plaintiff Maloney's account with Comenity went into default.

9

47. Prior to October 7, 2016, and after Plaintiff Maloney's account with Comenity was in default, Comenity sold or otherwise assigned the ownership rights to Plaintiff's account to Midland Funding.

48. On or about October 7, 2016, MCM mailed a debt collection letter to Plaintiff Maloney regarding an alleged debt, allegedly owed to Midland Funding and originally owed to Comenity. A copy of this letter is attached to this complaint as <u>Exhibit A</u> and a copy of the envelope in which it was received is attached as <u>Exhibit B</u>.

49. The alleged debt identified in <u>Exhibit A</u> was for a personal credit card account used only for personal, family or household purposes.

50. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

51. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Midland to attempt to collect alleged debts.

52. Upon information and belief, <u>Exhibit B</u> is a form debt collection envelope used by Midland to attempt to collect alleged debts.

53. <u>Exhibit A</u> contains bold, all-capitalized text at the top of the letter:

**NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW**

54. <u>Exhibit A</u> also contains the following:

> Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the validation period described on the back of this letter. Upon receipt of this notice, please call to discuss your options.
>
> If we don't hear from you or receive payment by 11-21-2016, we may proceed with forwarding this account to an attorney.

55. Exhibit A also contains the following:

> **BENEFITS OF PAYING**
> ➢ This may be your last chance to work with us before the account goes to an attorney.

56. Exhibit A also contains the following:

> **LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. **We encourage you to call us: (800) 939-2353.**

57. The above language is false, misleading and confusing to the unsophisticated consumer.

58. At the time Exhibit A was sent to Plaintiff Maloney, Midland did not intend to sue Plaintiff Maloney, even if no payments were made on the account by 11-21-2016.

59. Despite the clear language threatening to send the account to "an attorney in your state . . . if we don't hear from you or receive payment by 11-21-2016," Midland did not file a lawsuit against Plaintiff Maloney.

60. A search of CCAP on September 29, 2017 shows no civil actions filed by Midland against Plaintiff Maloney in Wisconsin.

61. An unsophisticated consumer would understand that Exhibit A threatens a lawsuit, and/or implies that legal action will be taken unless payment or a phone call is made by 11-21-2016.

62. Debt collection letters that falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been

made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989).

63. Even indirect or oblique threats give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136.

64. The unsophisticated consumer would interpret the "pre-legal status" and the statement that "if we don't hear from you or receive payment by 11-21-2016, we may proceed with forwarding this account to an attorney" as a threat that the account is on a litigation track.

65. The threat of litigation in Midland's letter is false and misleading and exists only to unfairly scare consumers.

66. In fact, Plaintiff's account was not forwarded to an attorney network.

67. Additionally, Exhibit B included extraneous text.

68. The exterior face of Exhibit B, containing Plaintiff's mailing address, also states in the upper right hand corner, "U.S.POSTAGE PAID MCM."

### *Vega Letter*

69. Plaintiff Amy Vega entered into a consumer transaction with Synchrony Bank. ("Synchrony") for a personal credit card.

70. Prior to October 12, 2016, Plaintiff Vega's account with Synchrony went into default.

71. Prior to October 12, 2016, and after Plaintiff Vega's account with Synchrony was in default, Synchrony sold or otherwise assigned the ownership rights to Plaintiff Vega's account to Midland Funding.

12

72. On or about October 12, 2016, MCM mailed a debt collection letter to Plaintiff Vega regarding an alleged debt, allegedly owed to Midland Funding and originally owed to Synchrony. A copy of this letter is attached to this complaint as Exhibit C and a copy of the envelope in which it was received is attached as Exhibit D.

73. The alleged debt identified in Exhibit C was for a personal credit card account used only for personal, family or household purposes.

74. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiffs inserted by computer.

75. Upon information and belief, Exhibit C is a form debt collection letter used by Midland to attempt to collect alleged debts.

76. Upon information and belief, Exhibit D is a form debt collection envelope used by Midland to attempt to collect alleged debts.

77. Exhibit D included extraneous text.

78. The exterior face of Exhibit D containing Plaintiffs' mailing address also states "Time Sensitive Document" and, in the upper right hand corner, "U.S. POSTAGE PAID MCM." Plaintiff Czarnecki entered into a consumer transaction with Comenity Bank ("Comenity") for a personal credit card.

### *Czarnecki Letter*

79. Prior to January 20, 2017, Plaintiff Czarnecki's account with Comenity went into default.

80. Prior to January 20, 2017, and after Plaintiff Czarnecki's account with Comenity was in default, Comenity sold or otherwise assigned the ownership rights to Plaintiff's account to Midland Funding.

13

81. On or about January 20, 2017, MCM mailed a debt collection letter to Plaintiff Czarnecki regarding an alleged debt, allegedly owed to Midland Funding and originally owed to Comenity. A copy of this letter is attached to this complaint as <u>Exhibit E</u> and a copy of the envelope in which it was received is attached as <u>Exhibit F</u>.

82. The alleged debt identified in <u>Exhibit E</u> was for a personal credit card account used only for personal, family or household purposes.

83. Upon information and belief, <u>Exhibit E</u> is a form letter, generated by computer, and with the information specific to Plaintiffs inserted by computer.

84. Upon information and belief, <u>Exhibit E</u> is a form debt collection letter used by Midland to attempt to collect alleged debts.

85. Upon information and belief, <u>Exhibit F</u> is a form debt collection envelope used by Midland to attempt to collect alleged debts.

86. <u>Exhibit F</u> included extraneous text.

87. The exterior face of <u>Exhibit F</u> containing Plaintiffs' mailing address also states "Time Sensitive Document" and, in the upper right hand corner, "U.S. POSTAGE PAID MCM."

88. The Fair Debt Collection Practices Act prohibits unfair debt collection practices. 15 U.S.C. § 1692f.

89. This prohibition includes 15 U.S.C. § 1692f(8): "Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

14

90. The language on Exhibit B, Exhibit D, and Exhibit F violates the plain language of 15 U.S.C. § 1692f(8). The statute contains no exceptions – any extraneous text on the envelope or on the outside of a self-mailer violates 15 U.S.C. § 1692f(8).

91. Moreover, the extraneous text in Exhibit D and Exhibit F indicates that the letters are, in fact, debt collection letters. *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) (disclosure through window envelope "implicates a core concern animating the FDCPA—the invasion of privacy."); *Peter v. GC Services L.P.*, 310 F.3d 344, 351 (5th Cir. 2002).

92. In *Peter*, for example, the Fifth Circuit held that text on the envelope impersonating the U.S. Department of Education[1] "implicates this core concern of the FDCPA [impersonating public officials]." *Peter*, 310 F.3d at 351-52.

93. Likewise, in *Douglass*, the Third Circuit held that a collection letter displaying the consumer's account number and a QR code[2] that linked to the consumer's alleged debt, through a "glassine" window envelope, violated § 1692f(8). *Douglass*, 765 F.3d at 303 ("Convergent's disclosure implicates a core concern animating the FDCPA—the invasion of privacy.")

94. As in *Douglass* and *Peter*, the language on Exhibit B, Exhibit D, and Exhibit F implicates a core concern animating the FDCPA – privacy.

95. Several sections of the FDCPA prohibit debt collectors from publicly disclosing that the consumer allegedly owes a debt, or that the debt collector is collecting a debt.

---

[1] US Department of Education
P.O. Box 4144
Greenville, TX 75403-4144
Official Business
Penalty for Private Use, $ 300

*Peter*, 310 F.3d at 347.

[2] "QR Code" is a trademark type of barcode. *See* http://en.wikipedia.org/wiki/QR_code (last visited September 25, 2017).

96. For example, 15 U.S.C. § 1692f(7) prohibits: "Communicating with a consumer regarding a debt by post card." The content of a post card is visible to anyone who views it.

97. Likewise, 15 U.S.C. § 1692c(b) prohibits most communications with third parties:

(b) **Communication with third parties**
Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

98. 15 U.S.C. § 1692b allows but strictly regulates communications with third parties for the purpose of obtaining the consumer's location information, including explicit prohibitions against stating "that such consumer owes any debt," and using "any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt." 15 U.S.C. §§ 1692b(2), 1692b(5).

99. Privacy of the consumer's personal information, including the existence and amount of a debt, is clearly "a core concern animating the FDCPA." *Douglass*, 765 F.3d at 303-04.

100. The statement: "U.S.POSTAGE PAID MCM" discloses to anyone viewing Exhibit B and Exhibit D who the letter is from and that the letter's purpose is debt collection. Exhibit D and Exhibit F additionally state: "Time Sensitive Document" making it even clearer that the letter's purpose is debt collection.

101. The unsophisticated consumer, viewing Exhibit B, Exhibit D, and Exhibit F would conclude that Exhibit B and Exhibit D is a debt collection letter.

102. The sole purpose of the above statement is to make clear that Exhibit B, Exhibit D, and Exhibit F are debt collection letters/envelopes.

16

103. Further, it is simple for a debt collector to comply with 15 U.S.C. § 1692f(8) – do not print extraneous information on the envelopes or allow it to show through the glassine windows of envelopes.

104. Plaintiffs were confused by Exhibit A, Exhibit B, Exhibit D, and Exhibit F.

105. The unsophisticated consumer would be confused by Exhibit A, Exhibit B, Exhibit D, and Exhibit F.

106. Plaintiffs had to spend time and money investigating Exhibit A, Exhibit B, Exhibit D, and Exhibit F.

107. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibit A , Exhibit B, Exhibit D, and Exhibit F.

### COUNT I – FDCPA

108. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

109. Count I is brought on behalf of Plaintiffs Maloney, Vega, and Czarnecki.

110. Exhibit B, Exhibit D, and Exhibit F contain extraneous text, which states: "U.S.POSTAGE PAID MCM." Exhibit D and Exhibit F additionally state, "Time Sensitive Document." Exhibit B, Exhibit D, and Exhibit F disclose the existence of a debt and that it is from a debt collector.

111. The unsophisticated consumer viewing Exhibit B, Exhibit D, and Exhibit F would determine that Exhibit B, Exhibit D, and Exhibit F were mailed by a debt collector.

112. Defendants violated 15 U.S.C. §§ 1692f and 1692f(8).

## COUNT II – FDCPA

113. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

114. Count II is brought on behalf of Plaintiff Maloney.

115. Exhibit A falsely threatens to send Maloney's account to an attorney and/or threaten a lawsuit against Plaintiff if Plaintiff does not pay or call Midland by a specified date.

116. At the time Exhibit A and Exhibit B were sent, Midland did not intend to file a lawsuit against Maloney even if Maloney did not pay or call by such date.

117. Defendants' conduct violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT III – WCA

118. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

119. Count III is brought on behalf of Plaintiff Maloney.

120. Exhibit A threatens and implies legal action notwithstanding the fact that Midland did not intend to forward the letter to an attorney network even if Maloney did not pay or call by the date specified in the letters.

121. Such conduct violates Wis. Stat. §§ 427.104(1)(L) and 427.104(1)(h).

## CLASS ALLEGATIONS

122. Plaintiffs bring this action on behalf of two Classes.

123. Class One consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibit B, Exhibit D, and Exhibit F to the complaint in this action, (c) seeking to collect a debt for personal, family or household

18

purposes, (d) between September 29, 2016 and September 29, 2017, inclusive (e) that was not returned by the postal service. Class One shall be known as the "Extraneous Text" class and Plaintiffs Maloney, Vega, and Czarnecki are the designated representatives.

124. Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between September 29, 2016 and September 29, 2017, inclusive (e) that was not returned by the postal service. Class Two shall be known as the "Threat of Lawsuit" class and Plaintiff Maloney is the designated representative.

125. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

126. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A, Exhibit B, Exhibit D, or Exhibit F violates the FDCPA.

127. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

128. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

129. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

130. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 29, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com